# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MARVIN WAYNE NICKODAM,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00028 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Larry V. Roberts, The Roberts Law Firm, Kingsport, Tennessee, for Plaintiff; Dina White Griffin, Assistant Regional Counsel, Eric P. Kressman, Regional Chief Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I remand for further proceedings consistent with this Opinion.

I

The plaintiff, Marvin W. Nickodam, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act

(the "Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

Nickodam filed for benefits on November 26, 2006, alleging that he first became disabled on September 11, 2006, due to back pain. His claim was denied initially and upon reconsideration. Nickodam received a hearing before an administrative law judge ("ALJ"), during which Nickodam, represented by counsel, and a vocational expert testified. The ALJ denied Nickodam's claim and the Social Security Administration's Appeals Council denied his request for review. Nickodam then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is ripe for decision.

II

Nickodam was 51 years old at the time of the alleged disability onset date, a person closely approaching advanced age under the regulations. *See* 20 C.F.R. § 404.1563 (2010). He completed school through the tenth grade and received only on the job training. His prior work includes working in underground mining as a motorman, roof bolt operator, and shuttle car operator.

Nickodam claims that he is disabled due to a back injury. He went to Lee Regional Medical Center on August 21, 2006, complaining of low back pain that radiated down his right leg and left him unable to rest or sleep. He was prescribed Valium, Lortab, and Prednisone. He returned complaining of back pain on September 11, 2006 and saw Victor Rossi, M.D.. He was diagnosed with mild scoliosis and mild degenerative disc disease and was referred to a neurosurgeon.

Nickodam then saw Gregory Corradino, M.D., a neurosurgeon. In October 2006, Dr. Corradino performed surgery for a herniated disc in Nickodam's lumbar spine. In December 2006, Nickodam continued to complain of some back pain, had poor flexion, favored and had weakness in his right leg, and performed heel and toe walking poorly. He continued taking Lortab and Flexeril. Dr. Corradino advised Nickodam that he should not referee a basketball game and limited him to lifting 10 to 15 pounds. He also told Nickodam to avoid bending or twisting. In January 2007, Nickodam reported to Dr. Corradino that he was suffering from low back pain and weakness in his right leg. The straight leg test was positive in the right leg at 75 degrees, and Nickodam had difficulty with toe and heel walking. Nickodam also reported that the Lortab upset his stomach.

Nickodam saw Kiran Chennareddy, M.D., in January 2007, and complained of lower back pain, pain in his left hip, and numbness in his left foot. Nickodam's low

back was tender to palpitation, and he had a decreased range of motion. He also complained of intermittent abdominal pain and was prescribed Nexium.

In February 2007 Nickodam saw Dr. Corradino and complained of pain in his low back and right leg. A radiology report indicated that Nickodam had mild to moderate disc space narrowing and degeneration, minimal and more prominent bulging, and some evidence of a very small annular tear.

In March 2007, Ernie Dickson, P.T., performed a Functional Capacity Evaluation ("FCE") on Nickodam. Nickodam reported that he could sit for a maximum of 45 minutes and could stand for a maximum of 15 to 20 minutes. Dickson did not perform any tests to confirm those limitations. Dickson determined that Nickodam gave a fair effort. He reported that Nickodam's activity levels qualified him for sedentary physical demand level of work based on his lifting, carrying, and pushing and pulling capabilities. He noted there were moderate restrictions in Nickodam's lumbar range of motion and signs of weakness in his hip. He observed that Nickodam had difficulty with repetitive forward bending, squatting, stooping, crouching, and stair climbing.

Dr. Corradino completed a form in May 2007 indicating that Nickodam reached maximum medical improvement for his injury in April 2007 and that he was

permanently restricted to lifting 10 to 15 pounds, not bending, not twisting for more than 20% of his job, and standing or sitting for only 30 minutes at a time.

In June 2007, Dr. Chennareddy certified that Nickodam was disabled, and in August 2007 he wrote a letter stating that Nickodam continued to have back pain and that his activity levels qualified for only sedentary work.

Robert McGuffin, M.D., a medical consultant, completed a residual functional capacity assessment based on the records in Nickodam's medical file in February 2007. Dr. McGuffin concluded that Nickodam could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand or walk six hours in an eight-hour workday with normal breaks, could sit six hours in an eight hour workday with normal breaks, and should avoid exposure to hazards. Dr. McGuffin concluded that Dr. Corradino's recommendation that Nickodam stay off work and lift only 10 to 15 pounds appeared consistent with the evidence in the file. Joseph Duckwall, M.D., another medical consultant reviewed the file in June 2007 and reached similar conclusions.

The ALJ determined that Nickodam suffers from the severe impairment of degenerative disc disease of the lumbar spine. However, he determined that the impairment was not disabling because, although Nickodam is unable to perform his past work, he remains capable of performing light work with limitations. The

limitations assigned by the ALJ are that Nickodam cannot climb ropes, ladders or scaffolds; must avoid hazards such as unprotected heights or moving machinery; and can only occasionally stoop or crawl. At the administrative hearing, a vocational expert testified that given the residual functional capacity outlined by the ALJ, Nickodam was capable of performing jobs that exist in significant numbers in the national economy, including occupations such as a parking lot attendant, cashier, and usher or lobby attendant.

Nickodam argues that the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I remand the case for further consideration.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*, at 869.

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Nickodam argues that the ALJ's decision is not supported by substantial evidence. Particularly, he argues that the ALJ did not afford proper weight to the opinion of Dr. Corradino and erred in finding that the claimant's statements were not credible. Nickodam also argues that additional evidence should be considered.

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Here, the ALJ afforded "very limited weight" to the opinion of Dr. Corradino, a treating

physician, because the ALJ found that Dr. Corradino's opinion was not consistent with his examination findings, Nickodam's descriptions of his pain, and Nickodam's daily activities.

Affording more weight, if not controlling weight, to this opinion was warranted. Rather than finding "normal" examination results, Dr. Corradino found problems with Nickodam's straight leg tests and heel and toe walking. MRIs also showed abnormalities.

In addition, Nickodam's activities of daily living did not undermine Dr. Corradino's opinion because none of the reported activities of daily living, such as caring for his personal needs, driving, and shopping, were inconsistent with the limitations outlined by Dr. Corradino. Rather, Nickodam reported that a usual day involves little physical activity and that it is difficult for him to put his pants and socks on. (R. at 147). He also reported that he does not sleep well. Nickodam reported that he shopped for only 30 minutes about once a week and only purchased necessities. (R. at 149.) There was no evidence that Nickodam drove more than short distances, and he testified that on longer trips he has to get out and walk around. (R. at 40). Additionally, the ALJ includes going to basketball games as an activity of daily living, but Nickodam testified that he went to his son's basketball game once and wished he had not gone because he spent much of it out in the hall waiting for the

game to be over. (R. at 40). He did testify that he sometimes attends his daughter's basketball games. (R. at 43).

Furthermore, the medical consultants who reviewed Nickodam's files found that Dr. Corradino's opinion that Nickodam stay off work and avoid lifting more than 10 to 15 pounds was consistent with the medical record.

Nickodam also challenges the ALJ's credibility findings. The ALJ did not find Nickodam's statements about the intensity, persistence, and limiting effects of his symptoms to be credible. Although there is some evidence to undermine Nickodam's claims, such as a finding in the FCE that he sometimes was inconsistent or gave submaximal effort, there is other convincing evidence to support his claims. For example, the ALJ repeatedly refers to "normal findings." However, Nickodam's complaints of pain were bolstered by test results, such as results of straight leg tests and heel and toe walking, and MRI results showing disc degeneration and bulging.

There are other inaccuracies relied upon by the ALJ. The ALJ asserted that Nickodam's pain responded well to treatment and was only taking his medication "as needed." This assertion is not supported by the evidence, as Dr. Corradino's notes indicate that Nickodam's medications were not helping very well. (R. at 237.) Furthermore, that he takes medications "as needed" has little meaning without knowing how often they are needed. In fact, Nickodam testified that his Lortab

prescription had been increased. (R. at 36). As of February 2007 he reported taking four Lortabs a day. (R. at 265). The ALJ also found, "There is no evidence supporting his alleged medication side effects." (R. at 17.) In fact, there is evidence that Nickodam suffered from side effects from his medications, as reflected in his medical records from his visit to Dr. Corradino in January 2007, when he reported that he thought the Lortab was upsetting his stomach. He testified that he was prescribed Nexium to offset the side effects.

Furthermore, as discussed with regard to Dr. Corradino's opinion, Nickodam's activities of daily living are not inconsistent with the limitations he reported. Notably, Nickodam wanted to present testimony from his wife to corroborate his claims, but the ALJ did not allow her to testify, stating that her testimony was not necessary.[1]

For these reasons, the ALJ's decision was not supported by substantial evidence. On remand, the Commissioner should reconsider the weight afforded to Dr. Corradino and reassess whether Nickodam's statements were unsupported by the medical record.

---

[1] The ALJ's reasoning was that because the claimant's wife worked out of the home during the day, "she doesn't observe him every day" (R. at 52) and that "I found very few spouses that come in and say they're not disabled" (*id*.). These do not appear to be sufficient grounds to refuse a witness with likely relevant evidence.

Nickodam also argues that the ALJ should have considered the opinion of Norman Hankins, Ph.D. Dr. Hankins completed a report stating that, in his opinion, Nickodam does not have any transferable work skills. However, it is not clear that the issue was in dispute because the ALJ found that Nickodam was capable of a range of light work. This opinion is relevant only if the ALJ determines that Nickodam is capable of sedentary work but disagrees with Dr. Hankins's opinion about the transferability of Nickodam's skills.

IV

For the foregoing reasons, the case will be remanded for further consideration consistent with this Opinion. An appropriate final judgment will be entered.

DATED: February 15, 2011

/s/ JAMES P. JONES
United States District Judge